No. 24-1350

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Cboe Global Markets, Inc., *et al.*,

Petitioners,

v.

Securities and Exchange Commission,

Respondent.

———

On Petition for Review of a Rule
of the Securities and Exchange Commission

———

**ADDENDUM TO BRIEF OF RESPONDENT
SECURITIES AND EXCHANGE COMMISSION**

———

JEFFREY B. FINNELL
*Acting General Counsel*

TRACEY A. HARDIN
*Solicitor*

DOMINICK V. FREDA
*Assistant General Counsel*

DANIEL E. MATRO
*Senior Appellate Counsel*

BROOKE J. WAGNER
*Appellate Counsel*

SECURITIES AND EXCHANGE
   COMMISSION
100 F Street, N.E.
Washington, D.C. 20549-9040
(202) 551-5292 (Wagner)
wagnerbr@sec.gov

# TABLE OF CONTENTS

Section 23, 15 U.S.C. § 78w ................................................................................ A-1
17 C.F.R. § 242.611 ............................................................................................. A-4
17 C.F.R. § 242.612 ............................................................................................. A-5



## § 78w. Rules, regulations, and orders; annual reports

### (a) Power to make rules and regulations; considerations; public disclosure

(1) The Commission, the Board of Governors of the Federal Reserve System, and the other agencies enumerated in section 78c(a)(34) of this title shall each have power to make such rules and regulations as may be necessary or appropriate to implement the provisions of this chapter for which they are responsible or for the execution of the functions vested in them by this chapter, and may for such purposes classify persons, securities, transactions, statements, applications, reports, and other matters within their respective jurisdictions, and prescribe greater, lesser, or different requirements for different classes thereof. No provision of this chapter imposing any liability shall apply to any act done or omitted in good faith in conformity with a rule, regulation, or order of the Commission, the Board of Governors of the Federal Reserve System, other agency enumerated in section 78c(a)(34) of this title, or any self-regulatory organization, notwithstanding that such rule, regulation, or order may thereafter be amended or rescinded or determined by judicial or other authority to be invalid for any reason.

(2) The Commission and the Secretary of the Treasury, in making rules and regulations pursuant to any provisions of this chapter, shall consider among other matters the impact any such rule or regulation would have on competition. The Commission and the Secretary of the Treasury shall not adopt any such rule or regulation which would impose a burden on competition not necessary or appropriate in furtherance of the purposes of this chapter. The Commission and the Secretary of the Treasury shall include in the statement of basis and purpose incorporated in any rule or regulation adopted under this chapter, the reasons for the Commission's or the Secretary's determination that any burden on competition imposed by such rule or regulation is necessary or appropriate in furtherance of the purposes of this chapter.

(3) The Commission and the Secretary, in making rules and regulations pursuant to any provision of this chapter, considering any application for registration in accordance with section 78s(a) of this title, or reviewing any proposed rule change of a self-regulatory organization in accordance with section 78s(b) of this title, shall keep in a public file and make available for copying all written statements filed with the Commission and the Secretary and all written communications between the Commission or the Secretary and any person relating to the proposed rule, regulation, application, or proposed rule change: *Provided, however*, That the Commission and the Secretary shall not be required to keep in a public file or make available for copying any such statement or communication which it may withhold from the public in accordance with the provisions of section 552 of title 5.

### (b) Annual report to Congress

(1) The Commission, the Board of Governors of the Federal Reserve System, and the other agencies enumerated in section 78c(a)(34) of this title shall each make an annual report to the Congress on its work for the preceding year, and shall include in each such report whatever information, data, and recommendations for further legislation it considers advisable with regard to matters within its respective jurisdiction under this chapter.

(2) The appropriate regulatory agency for a self-regulatory organization shall include in its annual report to the Congress for each fiscal year, a summary of its oversight activities under this chapter with respect to such self-regulatory organization, including a description of any examination conducted as part of such activities of any such organization, any material recommendation presented as part of such activities to such organization for changes in its organization or rules, and any action by such organization in response to any such recommendation.

(3) The appropriate regulatory agency for any class of municipal securities dealers shall include in its annual report to the Congress for each fiscal year a summary of its regulatory activities pursuant to this chapter with respect to such municipal securities dealers, including the nature of and reason for any sanction imposed pursuant to this chapter against any such municipal securities dealer.

(4) The Commission shall also include in its annual report to the Congress for each fiscal year—

(A) a summary of the Commission's oversight activities with respect to self-regulatory organizations for which it is not the appropriate regulatory agency, including a description of any examination of any such organization, any material recommendation presented to any such organization for changes in its organization or rules, and any action by any such organization in response to any such recommendations;

(B) a statement and analysis of the expenses and operations of each self-regulatory organization in connection with the performance of its responsibilities under this chapter, for which purpose data pertaining to such expenses and operations shall be made available by such organization to the Commission at its request;

(C) the steps the Commission has taken and the progress it has made toward ending the physical movement of the securities certificate in connection with the settlement of securities transactions, and its recommendations, if any, for legislation to eliminate the securities certificate;

(D) the number of requests for exemptions from provisions of this chapter received, the number granted, and the basis upon which any such exemption was granted;

(E) a summary of the Commission's regulatory activities with respect to municipal securities dealers for which it is not the appropriate regulatory agency, including the nature of, and reason for, any sanction imposed in proceedings against such municipal securities dealers;

(F) a statement of the time elapsed between the filing of reports pursuant to section 78m(f)

of this title and the public availability of the information contained therein, the costs involved in the Commission's processing of such reports and tabulating such information, the manner in which the Commission uses such information, and the steps the Commission has taken and the progress it has made toward requiring such reports to be filed and such information to be made available to the public in machine language;

(G) information concerning (i) the effects its rules and regulations are having on the viability of small brokers and dealers; (ii) its attempts to reduce any unnecessary reporting burden on such brokers and dealers; and (iii) its efforts to help to assure the continued participation of small brokers and dealers in the United States securities markets;

(H) a statement detailing its administration of the Freedom of Information Act, section 552 of title 5, including a copy of the report filed pursuant to subsection (d) of such section; and

(I) the steps that have been taken and the progress that has been made in promoting the timely public dissemination and availability for analytical purposes (on a fair, reasonable, and nondiscriminatory basis) of information concerning government securities transactions and quotations, and its recommendations, if any, for legislation to assure timely dissemination of (i) information on transactions in regularly traded government securities sufficient to permit the determination of the prevailing market price for such securities, and (ii) reports of the highest published bids and lowest published offers for government securities (including the size at which persons are willing to trade with respect to such bids and offers).

**(c) Procedure for adjudication**

The Commission, by rule, shall prescribe the procedure applicable to every case pursuant to this chapter of adjudication (as defined in section 551 of title 5) not required to be determined on the record after notice and opportunity for hearing. Such rules shall, as a minimum, provide that prompt notice shall be given of any adverse action or final disposition and that such notice and the entry of any order shall be accompanied by a statement of written reasons.

**(d) Cease-and-desist procedures**

Within 1 year after October 15, 1990, the Commission shall establish regulations providing for the expeditious conduct of hearings and rendering of decisions under section 78u–3 of this title, section 77h–1 of this title, section 80a–9(f) of this title, and section 80b–3(k) of this title.

(June 6, 1934, ch. 404, title I, §23, 48 Stat. 901; Aug. 23, 1935, ch. 614, §203(a), 49 Stat. 704; May 27, 1936, ch. 462, §8, 49 Stat. 1379; Pub. L. 88–467, §10, Aug. 20, 1964, 78 Stat. 580; Pub. L. 94–29, §18, June 4, 1975, 89 Stat. 155; Pub. L. 99–571, title I, §102(j), Oct. 28, 1986, 100 Stat. 3220; Pub. L. 100–181, title III, §§324, 325, Dec. 4, 1987, 101 Stat. 1259; Pub. L. 101–429, title II, §204, Oct. 15, 1990, 104 Stat. 940; Pub. L. 103–202, title I, §107, Dec. 17, 1993, 107 Stat. 2351; Pub. L. 109–351, title IV, §401(a)(3), Oct. 13, 2006, 120 Stat. 1973; Pub. L. 111–203, title III, §376(4), July 21, 2010, 124 Stat. 1569.)

### Editorial Notes

REFERENCES IN TEXT

This chapter, referred to in subsecs. (a) to (c), was in the original ''this title''. See References in Text note set out under section 78a of this title.

AMENDMENTS

2010—Subsec. (b)(1). Pub. L. 111–203 struck out '', other than the Office of Thrift Supervision,'' before ''shall each make''.

2006—Subsec. (b)(1). Pub. L. 109–351 inserted ''other than the Office of Thrift Supervision,'' before ''shall each''.

1993—Subsec. (b)(4)(C) to (K). Pub. L. 103–202, §107, redesignated subpars. (E) to (G) and (I) to (K) as (C) to (E) and (F) to (H), respectively, added a new subpar. (I), and struck out former subpars. (C), (D), and (H). Prior to amendment, subpars. (C), (D), and (H) read as follows:

''(C) beginning in 1975 and ending in 1980, information, data, and recommendations with respect to the development of a national system for the prompt and accurate clearance and settlement of securities transactions, including a summary of the regulatory activities, operational capabilities, financial resources, and plans of self-regulatory organizations and registered transfer agents with respect thereto;

''(D) beginning in 1975 and ending in 1980, a description of the steps taken, and an evaluation of the progress made, toward the establishment of a national market system, and recommendations for further legislation it considers advisable with respect to such system;

''(H) beginning in 1975 and ending in 1980, a description of the effect the absence of any schedule or fixed rates of commissions, allowances, discounts, or other fees to be charged by members for effecting transactions on a national securities exchange is having on the maintenance of fair and orderly markets and the development of a national market system for securities;''.

1990—Subsec. (d). Pub. L. 101–429 added subsec. (d).

1987—Subsec. (a)(1). Pub. L. 100–181, §324(1), inserted ''or'' before ''any self-regulatory organization'' in last sentence.

Subsec. (a)(3). Pub. L. 100–181, §324(2), inserted ''shall'' after ''section 78s(b) of this title,''.

Subsec. (b)(4)(F). Pub. L. 100–181, §325, substituted ''the'' for ''The''.

1986—Subsec. (a)(2). Pub. L. 99–571, §102(j)(1), (2), inserted ''and the Secretary of the Treasury'' in three places and ''or the Secretary's'' in one place.

Subsec. (a)(3). Pub. L. 99–571, §102(j)(3), (4), inserted ''and the Secretary'' in three places and ''or the Secretary'' in one place.

1975—Subsec. (a). Pub. L. 94–29 designated existing provisions as par. (1), inserted references to other agencies enumerated in section 78c(a)(34) of this title, regulations appropriate to implement the provisions of this chapter for which the agencies are responsible, the classification of persons, transactions, statements, applications, and reports, the prescribing of greater, lesser, or different requirements for different classifications, and the non-liability of self-regulatory organization, and added pars. (2) and (3).

Subsec. (b). Pub. L. 94–29 designated existing provisions as par. (1), substituted ''The Commission, the Board of Governors of the Federal Reserve System, and the other agencies enumerated in section 78c(a)(34) of this title, shall each make an annual report to the Congress on its work for the preceding year, and shall include in each such report whatever information, data, and recommendations for further legislation it considers advisable with regard to matters within its respective jurisdiction under this chapter'' for ''The Commission and the Board of Governors of the Federal Reserve System, respectively, shall include in their annual reports to Congress such information, data, and

recommendation for further legislation as they may deem advisable with regard to matters within their respective jurisdictions under this chapter. The Commission shall include in its annual reports to the Congress for the fiscal years ended on June 30 of 1965, 1966, and 1967 information, data, and recommendations specifically related to the operation of the amendments to this chapter made by the Securities Acts Amendments of 1964'', and added pars. (2) to (4).

Subsec. (c). Pub. L. 94–29 added subsec. (c).

1964—Subsec. (b). Pub. L. 88–467 required the Commission in its annual reports to Congress for fiscal years ending June 30, 1965, 1966, and 1967, to furnish information, data, and recommendations specifically related to the operations of the amendments to the Securities Exchange Act of 1934 made by the Securities Act Amendments of 1964.

1936—Subsec. (a). Act May 27, 1936, inserted second sentence.

**Statutory Notes and Related Subsidiaries**

CHANGE OF NAME

Section 203(a) of act Aug. 23, 1935, substituted ''Board of Governors of the Federal Reserve System'' for ''Federal Reserve Board''.

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the transfer date, see section 351 of Pub. L. 111–203, set out as a note under section 906 of Title 2, The Congress.

EFFECTIVE DATE OF 1990 AMENDMENT

Amendment by Pub. L. 101–429 effective Oct. 15, 1990, with provisions relating to civil penalties and accounting and disgorgement, see section 1(c)(1), (2) of Pub. L. 101–429, set out in a note under section 77g of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–571 effective 270 days after Oct. 28, 1986, see section 401 of Pub. L. 99–571, set out as an Effective Date note under section 78*o*–5 of this title.

EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–29 effective June 4, 1975, see section 31(a) of Pub. L. 94–29, set out as a note under section 78b of this title.

EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–467 effective Aug. 20, 1964, see section 13 of Pub. L. 88–467, set out as a note under section 78c of this title.

CONSTRUCTION OF 1993 AMENDMENT

Amendment by Pub. L. 103–202 not to be construed to govern initial issuance of any public debt obligation or to grant any authority to (or extend any authority of) the Securities and Exchange Commission, any appropriate regulatory agency, or a self-regulatory organization to prescribe any procedure, term, or condition of such initial issuance, to promulgate any rule or regulation governing such initial issuance, or to otherwise regulate in any manner such initial issuance, see section 111 of Pub. L. 103–202, set out as a note under section 78*o*–5 of this title.

TERMINATION OF REPORTING REQUIREMENTS

For termination, effective May 15, 2000, of provisions of law requiring submittal to Congress of any annual, semiannual, or other regular periodic report listed in House Document No. 103–7 (in which the 2nd item on page 143, the 18th item on page 167, the 7th item on page 172, and 18th item on page 190 identify a reporting provision which, as subsequently amended, is contained in subsec. (b) of this section), see section 3003 of Pub. L. 104–66, as amended, set out as a note under section 1113 of Title 31, Money and Finance.

**Executive Documents**

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§ 1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78x. Public availability of information

### (a) ''Records'' defined

For purposes of section 552 of title 5 the term ''records'' includes all applications, statements, reports, contracts, correspondence, notices, and other documents filed with or otherwise obtained by the Commission pursuant to this chapter or otherwise.

### (b) Disclosure or personal use

It shall be unlawful for any member, officer, or employee of the Commission to disclose to any person other than a member, officer, or employee of the Commission, or to use for personal benefit, any information contained in any application, statement, report, contract, correspondence, notice, or other document filed with or otherwise obtained by the Commission (1) in contravention of the rules and regulations of the Commission under section 552 of title 5, or (2) in circumstances where the Commission has determined pursuant to such rules to accord confidential treatment to such information.

### (c) Confidential disclosures

The Commission may, in its discretion and upon a showing that such information is needed, provide all ''records'' (as defined in subsection (a)) and other information in its possession to such persons, both domestic and foreign, as the Commission by rule deems appropriate if the person receiving such records or information provides such assurances of confidentiality as the Commission deems appropriate.

### (d) Records obtained from foreign securities authorities

Except as provided in subsection (g), the Commission shall not be compelled to disclose records obtained from a foreign securities authority if (1) the foreign securities authority has in good faith determined and represented to the Commission that public disclosure of such records would violate the laws applicable to that foreign securities authority, and (2) the Commission obtains such records pursuant to (A) such procedure as the Commission may authorize for use in connection with the administration or enforcement of the securities laws, or (B) a memorandum of understanding. For purposes of section 552 of title 5, this subsection shall be considered a statute described in subsection (b)(3)(B) of such section 552.

### (e) Freedom of Information Act

For purposes of section 552(b)(8) of title 5 (commonly referred to as the Freedom of Information Act)—

(1) the Commission is an agency responsible for the regulation or supervision of financial institutions; and

(2) any entity for which the Commission is responsible for regulating, supervising, or ex-

§ 242.611

displayed through its SRO trading facility.

(b) *Quotations of SRO display-only facility.* (1) Any trading center that displays quotations in an NMS stock through an SRO display-only facility shall provide a level and cost of access to such quotations that is substantially equivalent to the level and cost of access to quotations displayed by SRO trading facilities in that stock.

(2) Any trading center that displays quotations in an NMS stock through an SRO display-only facility shall not impose unfairly discriminatory terms that prevent or inhibit any person from obtaining efficient access to such quotations through a member, subscriber, or customer of the trading center.

(c) *Fees for access to quotations.* A trading center shall not impose, nor permit to be imposed, any fee or fees for the execution of an order against a protected quotation of the trading center or against any other quotation of the trading center that is the best bid or best offer of a national securities exchange, the best bid or best offer of The Nasdaq Stock Market, Inc., or the best bid or best offer of a national securities association other than the best bid or best offer of The Nasdaq Stock Market, Inc. in an NMS stock that exceed or accumulate to more than the following limits:

(1) If the price of a protected quotation or other quotation is $1.00 or more, the fee or fees cannot exceed or accumulate to more than $0.003 per share; or

(2) If the price of a protected quotation or other quotation is less than $1.00, the fee or fees cannot exceed or accumulate to more than 0.3% of the quotation price per share.

(d) *Locking or crossing quotations.* Each national securities exchange and national securities association shall establish, maintain, and enforce written rules that:

(1) Require its members reasonably to avoid:

(i) Displaying quotations that lock or cross any protected quotation in an NMS stock; and

(ii) Displaying manual quotations that lock or cross any quotation in an NMS stock disseminated pursuant to an effective national market system plan;

(2) Are reasonably designed to assure the reconciliation of locked or crossed quotations in an NMS stock; and

(3) Prohibit its members from engaging in a pattern or practice of displaying quotations that lock or cross any protected quotation in an NMS stock, or of displaying manual quotations that lock or cross any quotation in an NMS stock disseminated pursuant to an effective national market system plan, other than displaying quotations that lock or cross any protected or other quotation as permitted by an exception contained in its rules established pursuant to paragraph (d)(1) of this section.

(e) *Exemptions.* The Commission, by order, may exempt from the provisions of this section, either unconditionally or on specified terms and conditions, any person, security, quotations, orders, or fees, or any class or classes of persons, securities, quotations, orders, or fees, if the Commission determines that such exemption is necessary or appropriate in the public interest, and is consistent with the protection of investors.

§ 242.611 Order protection rule.

(a) *Reasonable policies and procedures.* (1) A trading center shall establish, maintain, and enforce written policies and procedures that are reasonably designed to prevent trade-throughs on that trading center of protected quotations in NMS stocks that do not fall within an exception set forth in paragraph (b) of this section and, if relying on such an exception, that are reasonably designed to assure compliance with the terms of the exception.

(2) A trading center shall regularly surveil to ascertain the effectiveness of the policies and procedures required by paragraph (a)(1) of this section and shall take prompt action to remedy deficiencies in such policies and procedures.

(b) *Exceptions.* (1) The transaction that constituted the trade-through was effected when the trading center displaying the protected quotation that was traded through was experiencing a failure, material delay, or malfunction of its systems or equipment.

(2) The transaction that constituted the trade-through was not a "regular way" contract.

(3) The transaction that constituted the trade-through was a single-priced opening, reopening, or closing transaction by the trading center.

(4) The transaction that constituted the trade-through was executed at a time when a protected bid was priced higher than a protected offer in the NMS stock.

(5) The transaction that constituted the trade-through was the execution of an order identified as an intermarket sweep order.

(6) The transaction that constituted the trade-through was effected by a trading center that simultaneously routed an intermarket sweep order to execute against the full displayed size of any protected quotation in the NMS stock that was traded through.

(7) The transaction that constituted the trade-through was the execution of an order at a price that was not based, directly or indirectly, on the quoted price of the NMS stock at the time of execution and for which the material terms were not reasonably determinable at the time the commitment to execute the order was made.

(8) The trading center displaying the protected quotation that was traded through had displayed, within one second prior to execution of the transaction that constituted the trade-through, a best bid or best offer, as applicable, for the NMS stock with a price that was equal or inferior to the price of the trade-through transaction.

(9) The transaction that constituted the trade-through was the execution by a trading center of an order for which, at the time of receipt of the order, the trading center had guaranteed an execution at no worse than a specified price (a "stopped order"), where:

(i) The stopped order was for the account of a customer;

(ii) The customer agreed to the specified price on an order-by-order basis; and

(iii) The price of the trade-through transaction was, for a stopped buy order, lower than the national best bid in the NMS stock at the time of execution or, for a stopped sell order, higher than the national best offer in the NMS stock at the time of execution.

(c) *Intermarket sweep orders.* The trading center, broker, or dealer responsible for the routing of an intermarket sweep order shall take reasonable steps to establish that such order meets the requirements set forth in § 242.600(b)(38).

(d) *Exemptions.* The Commission, by order, may exempt from the provisions of this section, either unconditionally or on specified terms and conditions, any person, security, transaction, quotation, or order, or any class or classes of persons, securities, quotations, or orders, if the Commission determines that such exemption is necessary or appropriate in the public interest, and is consistent with the protection of investors.

[70 FR 37620, June 29, 2005, as amended at 83 FR 58429, Nov. 19, 2018; 86 FR 18811, Apr. 9, 2021]

### § 242.612 Minimum pricing increment.

(a) No national securities exchange, national securities association, alternative trading system, vendor, or broker or dealer shall display, rank, or accept from any person a bid or offer, an order, or an indication of interest in any NMS stock priced in an increment smaller than $0.01 if that bid or offer, order, or indication of interest is priced equal to or greater than $1.00 per share.

(b) No national securities exchange, national securities association, alternative trading system, vendor, or broker or dealer shall display, rank, or accept from any person a bid or offer, an order, or an indication of interest in any NMS stock priced in an increment smaller than $0.0001 if that bid or offer, order, or indication of interest is priced less than $1.00 per share.

(c) The Commission, by order, may exempt from the provisions of this section, either unconditionally or on specified terms and conditions, any person, security, quotation, or order, or any class or classes of persons, securities, quotations, or orders, if the Commission determines that such exemption is necessary or appropriate in the public interest, and is consistent with the protection of investors.

77

A-5

aworley on LAPBH6H6L3 with DISTILLER  VerDate Sep<11>2014  16:15 May 20, 2024  Jkt 262061  PO 00000  Frm 00087  Fmt 8010  Sfmt 8010  Q:\17\17V5.TXT  PC31